And we'll move to our third case this morning, and that is, I don't know if I'm pronouncing it correctly, Cocquyt v. SpartanNash Company in Martin Supermarkets. Mr. Nelson, come on up when you're ready. It's been a while since I've worn one of those, and now I've forgotten that I was wearing it. My apologies. Matthew Nelson on behalf of Martin Supermarkets and SpartanNash. May it please the court, this appeal arises from a judgment after a bench trial. The court concluded there that the employment agreement here at issue was ambiguous, and then interpreted the agreements based on extrinsic evidence to obligate SpartanNash to make a significant severance payment to Mr. Cocquyt. Court erred for two related reasons. First, the contracted issue expired. Therefore, there was nothing to enforce, and nothing about the severance agreement or the severance payment provision, section 5E of the agreement, suggested that it survived termination or expiration of the agreement. Second, there's no ambiguity in the contract. The contract plainly states that section 5E, like all of the provisions in section five with regard to early termination, apply to termination before the expiration, prior to the expiration of the full-time term. Here, the full-time term expired, and then the employment was terminated, and so 5E simply doesn't apply by its terms. That is also consistent with the entirety of the contract as a whole. If you look at section one with regard to the term of the agreement, it sets forth a three-year term, and it says section five applies to early termination. And then if you look to section 10, which talks about renewing the term of the agreement, it also says that section five applies to early termination and provides a procedure whereby the contract renews unless there's notice given within 60 days. Here, there was such notice given. There's no dispute about that. Therefore, section 5E simply doesn't apply. As a consequence, what the court should have done here was granted the motion for summary judgment based on the interpretation of the contract in favor of Spartan Nash and Martin Supermarkets, or done the same thing at the end of the bench trial. I have two additional points I'd like to raise. First of all, as I reviewed our arguments with regards to the if and only if language, it struck me that perhaps the most simple explanation of what this if and only if language that the district court found to be so important, that the best interpretation is simply to point to the if and only if as providing additional emphasis, that this is the sole situation in which this arises. That is consistent with also the additional language. This is a typical if then proposition. There was also some language added to the then, so it's then in that event, but also it's consistent with section 409A and the regulations under section 409A, which was the purpose for the amendment, which provides that there's an exception to certain tax obligations only if payments are made in a particular context. And you can see that in 26 CFR section 1409A, excuse me, 1.409A-3. Mr. Nelson. I'm sorry, go ahead. The payout is different under 5E as well, correct? And it seems that the if and only if gave that more beneficial payout. Correct, Your Honor. There's a difference in payout. There's a difference with regard to the notice requirement and perhaps most, something that the district court didn't appear to recognize. There's also an exclusion from the non-compete provision. If the termination is made under section 5E, then the non-compete provision doesn't apply. Can I run a question by you, Mr. Nelson? Certainly, Judge Scudder. So, one impression I have of reading the, I don't know, what it was in summary judgment order and then when you went to the bench trial. It's one of the things that Judge Simon really seemed to be struggling with. And I mean, I get it from the fact pattern is this could not possibly have been what was intended. It's a gap, perhaps, in the contract. It's a gap that your client maybe astutely realized and then made a commercial decision in response to. But it can't possibly be what was intended. And I think what he was worried about, and this is what I'm asking you to react to, is given that this is in such a different galaxy than these parties could have intended, there's no way I can interpret this language. And I hear them, they're saying it's plain and I get the canons and all that, to reach an absurd result. I just can't do that. What's your response to that? Your Honor, first I would say it's not an absurd result. The situation here is that Mr. Coquitt negotiated a contract with a three-year term that provided certain protections. Those protections existed for the three years and then were renewable for year upon year after that fact. After the three-year term expired, at the end of the three-year term expired, if it didn't renew, those protections were gone. So your point is that he, yeah, okay, he may have wanted some change in control protection but he also was very aware that the contract may not be renewed. And if it's not renewed, he's at risk. If it's not renewed, he's not even going to have a job. Well, if it's not renewed, I would agree if it's not renewed, he no longer has the benefits of the agreement. If you wanted a longer term for a longer initial term, he needed to negotiate for a longer initial term, whether that was five years or seven years. The agreement the parties reached was that these protections lasted for three years and three years only. But with regard to the employment, actually, it is not uncommon in a situation like this for an agreement to expire but employment to continue under the general terms and conditions of the workplace. Here that happened only for a few days. It's probably not worth- At that level? It's not unusual for that to happen at that level? Maybe a run of the mill, just general employee, but an executive at this high position? I would say it's probably, I would agree it's less usual here, but the situation that I have typically seen it in, and now I'm way outside the record, so my apologies, is in the context of sales representatives and sales representative agreements. That seems different than this agreement. I think that may be the case, but there's still employment agreements. And here, I mean, the employment is a possibility. But going back to the concept of absurd results, Your Honor, Judge Scudder, I just don't see this as an absurd result, especially if you look at it from the perspective of, now there's also a party coming in who's acquiring this agreement. When you read the agreement, what does it say? Well, it says these protections last for the three years, and after the three years, they no longer exist. Mr. Coquit got exactly what he bargained for. He didn't get anything less than what he bargained for, because that's what the plain language of the agreement says. If I may, I said I had two additional points I'd like to turn to the second one with regard to, there's an email from Ms. Tropiano that the district court references in its bench opinion that identifies confusion between Mr. Coquit and the company as to what was meant. I think the judge relied on that to suggest that the contract was ambiguous. And I would simply point to the canon that says that where there is disagreement of the parties, that doesn't necessarily mean that the agreement is ambiguous. Here, I think Ms. Tropiano, and I think the testimony in the record at pages 247 through 248 of the first volume of the transcript indicates she was just politely saying there's disagreement. Unless the court has further questions, I'd like to reserve the balance of my time. That's fine, thank you. Mr. Palmer. May it please the court, I'm Bob Palmer, on behalf of John Coquit. And with me at council table is my partner, Sean Towner. Excuse me. First point I want to make is whether there is an ambiguity in a contract is a question of law. In this court's standard review is de novo. My point with that is, if you find an ambiguity in the contract, whether it's the same ambiguity as the trial court found or a different ambiguity, you can affirm the trial court's judgment based on your de novo review. It's the same principle with respect to the denial of the motion for summary judgment. That's also within this court's de novo review. If the trial court was correct in denying the motion for summary judgment on any grounds supported by the record, you should affirm that. With respect to the ambiguities in the contract, this is indeed a strange case to argue. In the summary judgment proceedings, there was significant amounts of parole evidence introduced. There were no objections to the parole evidence. The parole evidence was undisputed as to the intent of the parties who negotiated this contract, Mr. Bartels and Mr. Colquitt. Nothing, it went to the trial court, the trial court denied the summary judgments. The same thing occurred at the trial court in the bench trial. There was copious amounts of parole evidence introduced. No objections. The parole evidence that was introduced, I'm not going to say is totally undisputed. There might be some dispute in there. But the parties who agreed and negotiated the contract, Mr. Bartels on behalf of Martins and Mr. Colquitt on behalf of himself are totally consistent with the intent of this contract. That if... Before we get to that, look, you're standing on your strongest ground, which is a good idea when you're arguing that. I get it. But can you... How do you get there on the language? Language very simply, Your Honor. Beginning of paragraph five, read your termination rights on termination. Employees employment may be terminated. And one of the following ways, prior to the expiration of the full-time term, they're talking about the employee being terminated, not the expiration of the term. The employee can be terminated before the expiration of the term by any of these methods. But we know that we know, do we not, from the plain language of this, that the contract can expire. Correct. And it, in fact, did expire. It did, without a renewal. Correct. And as counsel pointed out, Mr. Colquitt continued to be employed after the contract did not renew. It was only a few days, as counsel stated, but he did continue to be employed. Okay. But without a renewal and with the contract having expired, how is it that 5E's language, how do you get 5E's language to trigger? But by focusing on the contractual language. Yes, Your Honor. That's your challenge, I think. Correct, Your Honor. And you begin that analysis by looking at 5D, termination without cause. It talks about any time after, yes, at any time after the commencement of employment, the company may without cause terminate it, terminate the term and the employee's contract at any time after commencement. If that did not mean something more than prior to the renewal, it's meaningless. Those words have no meaning whatsoever. It's extending the contract provision beyond the term of the contract to include the employee's termination. And then that's carried over into... But we're not in a termination context, right? That's what we... No, we are, Your Honor. He was terminated. Oh, yeah, yeah, yeah. Okay. The contract expired. He was terminated at the expiration without a renewal. He was terminated... Yeah, you're right about that. He was terminated days after... You're right. ...the expiration of the contract. So then we go to 5E. If the employee is terminated, not if the contract fails to renew, but if the employee is terminated within 12 months after change of control, that's exactly what happened here. Mr. Colquitt was terminated less than 12 months after the change in control. It's not a situation where his employment ceased to exist by the failure to renew. His employment ceased to exist because he was specifically terminated as stated in his separation agreement. But that still falls under the general language in the introductory part of Paragraph 5, that the employee's employment may be terminated in any of the following ways prior to the expiration of the full term. Correct, Your Honor. But it also says in Paragraph D, at any time after the commencement of employment. So that phrase is unnecessary if those 5D and 5E applied only to prior to the expiration of the contract. By its own words, it extends to any time the employee is terminated. Prior to the expiration of the full three years. No, any time the employee is terminated. But then you're reading out the introductory language. No, it isn't, Your Honor. Because that's a subsection of Paragraph 5 that applies when he's terminated prior to the expiration of the full term. If they didn't want that introductory language to apply, they could have had a separate paragraph that said... They could have. Even if outside of this. But if they did want that to apply, there was no need to put in at any time after commencement of employment. It would have to be subject to the prefatory language if they wanted that to apply. By including at any time after the commencement of employment, then you use the word terminate. And that's something different than the failure to renew. He was terminated after the contract failed to renew. And then you set out the specific temporal requirements of Paragraph 5E. If the employee... Next to 5D for a minute. Why would it say then terminate the term and employee's employment if term didn't apply? Term and employee's employment. Those are two different things. I understand. But one of them is term, which is the three years. And one of them is the employee's employment, which continued past the term of the contract. It seems like what you're doing in this exchange with Judge St. Even, correct me if I'm wrong. It seems like what you're... Is urging a reading of 5 as a whole in 5E through 5D akin to the way they wrote Section 6. Okay, but they didn't... You know what I'm talking about. I do. You know it inside and out. The contract in Section 6 doesn't use that kind of language in 5 anywhere. Correct. But its existence in 6 shows that the parties knew how to draft a provision that may extend beyond the term. And Your Honor, by the fact of putting the temporal requirements in 5D and 5E, they also know how to draft a contract that goes beyond the expiration of the term of the agreement and applies to the termination of the employment itself. Well, they know how to do that because in Paragraph 6, they said during the term and thereafter. Correct. That's how you do that. And thereafter language doesn't exist anywhere in 5D or E. It goes back to the introductory language prior to the expiration of the full-time term. And I think that establishes the ambiguity in this contract. One final point in the last 10 seconds. I won't get to my cross-appeal, but we also have a contract where the undisputed evidence establishes the intent of the parties. We have a non-party to the contract, Spartan Nash, who assumes the contract. And MSM Holdings, or whatever their current name is now, they're disputing the clear intent of the contract. But as the court ruled in KR Enterprises, strangers to the contract have no grounds to challenge the contract at issue. I understand there's issues regarding privity, and the key is whether privity exists at the time the contract is executed or whether privity exists at the time of the breach of the contract. My point is that privity has to exist at the time the contract is executed. At the time this contract was executed, Spartan Nash was not a part of this. And at the time this contract was executed, Martin's Supermarkets, now known as MSM HoldCo Company, did not even exist. Both of the appellants in this case are strangers to this contract and have no standing to challenge the undisputed evidence of it. I don't understand that argument. Spartan Nash stands in the shoes of its predecessor in interest. Spartan Nash was not a party to the contract. I understand that, but it inherited the obligations. In other words, it inherited the contract, and so it stands in the shoes of its predecessor and can make any argument that was available to its predecessor. And the fact that there's a subjective disagreement over the objective meaning of the contract, well, you know, doesn't... There is not a disagreement over the meaning of the contract between the parties who negotiated the contract. As a subjective matter. We're looking at objective... Correct. Sources of contractual meaning. Correct. Right. And Spartan Nash is entitled to make every argument that would be available to it. There's no lack of standing here. Now, Your Honor, I respectfully disagree. I still think that Indiana adheres to the stranger to the contract provision. It's not a stranger to the contract. It inherited the obligations of the contract pursuant to its purchase of the company. And I will... So it's not a stranger. I will concede that because you are the judge, Your Honor. I think as an advocate, I have to disagree with you. Thank you. All right, Mr. Nelson. Your Honor, briefly three points. Specifically with regard to the stranger to the contract theory in addition to what you were saying, Judge Sykes, about Spartan Nash stepping into it. Also, MSM Holdcoat is Martin Supermarkets, and Martin Supermarkets is a party to the contract. But if the idea here is that Spartan Nash couldn't have breached the contract because it wasn't a party to the contract, we don't mind winning on that ground either. I'm just... And, you know, there's a subjective disagreement between the old principles and the new principles about how to read this contract, basically, is where we stand right now. I think that's a fair characterization, although I think the meaning of the contract is plain. Second, with regard to the argument about 5D, the argument that the court heard this morning is exactly the opposite of what was argued in Mr. Kokwit's opening brief. We're on page 21. He says, clearly, all of the other clauses, this is in paragraph five or in section five, all the other clauses pertain to termination events that can only occur while the agreement is active. And then later, while clauses A through D and F can only occur while the agreement is in effect. So that, I believe Mr. Kokwit took the same position that we do with regard to 5D. Finally, if I may return very briefly to the absurd results canon, I think before the court can determine whether there's an absurd result, the court would have to then turn to parole evidence. And extrinsic evidence can't be used to interpret the contract. So the only way that there is an expectation or any thought that this is absurd is by considering all of the extrinsic evidence that can't be considered when interpreting the contract. Unless the court has further questions, we would ask that the court reverse and remand for entry of judgment in favor of Spartan-Nash and Emerson-Holco. Thank you. Our thanks to all counsel. The case is taken under advisement.